IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIM. CASE NO. 1:21-cr-104-ECM |
| | ) | [WO] |
| JUSTIN ANTHONY WELLS | ) | |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court are Defendant Justin Anthony Wells' ("Wells") motion to immediately transport (doc. 118); the United States' motion for evaluation pursuant to 18 U.S.C. §§ 4241(d) and 4246 (doc. 122); and Wells' response to the United States' motion (doc. 125), which the Court construes as containing a motion for immediate release. For the reasons explained below, the Court finds that the United States' motion is due to be granted and Wells' motions are due to be denied without prejudice.

**BACKGROUND**

The Court has set out the procedural history of this case in prior opinions and orders and thus will not repeat it in its entirety here. The procedural history relevant to the matters before the Court is as follows. On November 5, 2021, this Court found Wells incompetent to stand trial and ordered that Wells be committed to the custody of the Attorney General for a period not to exceed four months for treatment to attempt to restore Wells to competency, pursuant to 18 U.S.C. § 4241(d). (Doc. 55). Wells did not arrive at the Federal Medical Center, Butner ("FMC Butner") for this treatment until May 3, 2022, approximately six months later.

A forensic psychologist at FMC Butner opined that Wells could not be restored to

competency, and also that he did not meet the criteria for commitment under 18 U.S.C. § 4246 and thus a certificate of dangerousness was not filed. (Doc. 74 at 12). On November 3, 2022, after a hearing and in open court, the Court determined that there was not a substantial probability that Wells could be restored to mental competency in the foreseeable future. (*See* doc. 93 at 3). On November 22, 2022, the Court ordered that Wells be conditionally released. (Doc. 93).

On September 21, 2023, after a hearing, the Court revoked Wells' conditional release in light of Wells' recent conduct which "raise[d] grave concerns about whether Wells is currently a danger to the public." (Doc. 117 at 5). The Court further ordered that Wells be committed to the custody of the Attorney General for a reasonable period of time, not to exceed forty-five days, to conduct a dangerousness assessment, pursuant to 18 U.S.C. §§ 4246(b) and 4247(b). (*Id.* at 5–6). The Court further ordered that Wells remain at FMC Butner for the evaluation. (*Id.* at 6). As of the date of this Order, Wells has not been transported to FMC Butner.

On January 29, 2024, Wells filed the motion to immediately transport which is presently before the Court. (Doc. 118). In the motion, Wells contends that the United States Marshal had informed defense counsel that Wells was on a "waiting list" to be transported but that Wells' placement on the list did not appear to be consistent, being number 17 at one point and then number 57 weeks later. (*Id.* at 118). On February 9, 2024, the United States filed a status report in which, among other things, it represented to the Court that an issue had arisen concerning FMC Butner's ability to conduct the dangerousness assessment of Wells, specifically FMC Butner's counsel's belief that it

could not conduct a second dangerousness assessment without the Court also ordering a renewed evaluation under 18 U.S.C. § 4241(d). (Doc. 120).

At a February 15, 2024 status conference concerning these issues, the United States represented to the Court that the Federal Bureau of Prisons ("BOP") has been and continues to experience systemic delays in transporting defendants for mental health evaluations and treatment and that the average wait time is approximately seven months.  The United States further represented that Wells would be transported to FMC Butner in April 2024, although the United States did not elaborate as to when precisely in April this transport would occur.  When the Court inquired about whether it could revise its prior Order to permit Wells to be transported to any suitable facility, as opposed to FMC Butner only, the United States represented to the Court that FMC Butner is one of only a few BOP facilities which can conduct § 4246 dangerousness assessments.  The United States also represented that the BOP would prefer for Wells return to FMC Butner because he was previously evaluated and treated there, and the BOP prefers to have continuity in treatment—i.e., that the same evaluators examine and treat the defendant.

## DISCUSSION

### Wells' Motion to Immediately Transport and Motion for Immediate Release

In his motion to immediately transport and his motion for immediate release, Wells argues that the delays in transporting Wells are unreasonable and potentially violate his due process rights.  He requests that the Court order him to be transported to a suitable facility within seven days or that he be immediately released. (Docs. 118, 125).

In *Jackson v. Indiana*, 406 U.S. 715, 720 (1972), the United States Supreme Court

held that the Fourteenth Amendment's Due Process Clause prohibits a defendant's indefinite detention due to his incompetence to stand trial.[1] The Court held that "[a]t the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson*, 406 U.S. at 738.

The Insanity Defense Reform Act ("IDRA") governs pretrial competency determinations. *See* 18 U.S.C. § 4241 *et seq.* After a defendant is found not competent to stand trial, the district court must commit him to the custody of the Attorney General for a reasonable time, not to exceed four months, to determine whether he can be restored to competency. *Id.* § 4241(d). If the defendant cannot be restored to competency, the IDRA contemplates the filing of a certificate of dangerousness if "the director of a facility in which [the defendant] is hospitalized" determines that the defendant "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available." *Id.* § 4246(a). If this certificate is filed, the court holds a hearing to determine whether the defendant is dangerous within the meaning of § 4246(a). *Id.* The IDRA also authorizes the court to order, prior to the hearing, a psychiatric or psychological examination of the defendant to determine whether the defendant is dangerous. *Id.* §§ 4246(b) & 4247(c). For an examination under § 4246, IDRA authorizes the district court to commit the defendant

---

[1] While *Jackson* interpreted the Fourteenth Amendment's Due Process Clause, the Court finds persuasive the decisions of other courts applying *Jackson* to the Fifth Amendment's Due Process Clause. *See, e.g.*, *United States v. Tucker*, 60 F.4th 879, 883–84 (4th Cir. 2023).

to the custody of the Attorney General "for a reasonable period, but not to exceed forty-five days, . . . for placement in a suitable facility." *Id.* § 4247(d).

As of the date of this order, Wells has experienced over a five-month delay in being transported to a suitable facility pursuant to § 4246 for an examination which itself cannot exceed forty-five days. And if he does not arrive at FMC Butner until the end of April, it will balloon into a seven-month delay. Multiple federal district courts have found that delays of a similar duration—and in some cases, delays of a lesser duration—to be transported for attempted restoration pursuant to § 4241 violated the defendant's due process rights or at least posed serious due process concerns. *See, e.g.*, *United States v. Zapata-Herrera*, 2015 WL 4878319, at *2–3 (S.D. Cal. Aug. 14, 2015) (finding that delay of approximately two and a half months in transporting defendant to hospital most likely violated the defendant's due process rights); *United States v. Smith*, 764 F. Supp. 2d 541, 543–45 (W.D.N.Y. 2011) (finding a due process violation where more than ten weeks had passed and the Attorney General still could not say when hospitalization would occur); *United States v. Sisk*, 2024 WL 495522, at *4 (S.D. Ind. Feb. 8 2024) (finding that five-month delay in transporting the defendant to be hospitalized for competency restoration "raise[d] serious due process concerns"); *United States v. Wazny*, 2022 WL 17363048, at *7 (M.D. Pa. Dec. 1, 2022) (concluding that eight month delay in transporting defendant was presumptively unreasonable); *United States v. Lara*, 671 F. Supp. 3d 1257 (D.N.M. 2023) (concluding that eight month delay violated due process); *United States v. Reeves*, --- F. Supp. 3d ----, 2023 WL 5736944, at *3 (W.D.N.C. Sept. 5, 2023) (concluding that a nine-month delay in transporting the defendant for restoration under § 4241(d) violated the

defendant's due process rights); *United States v. Calderon-Chavez*, 2023 WL 5345582, at *11 (W.D. Tex. Aug. 18, 2023) (finding that nine-month delay in transporting defendant for treatment/restoration under § 4241(d) violated due process).

The Court finds that the present five-month delay, which could become as long as a seven-month delay, in transporting Wells for an examination which itself cannot exceed forty-five days presents serious due process concerns, especially when considered in conjunction with the prior six-month delay in transporting Wells for treatment and restoration under § 4241. This delay is, at best, over three times as long as "the maximum time Congress permitted for the entire length of [Wells'] hospitalization" and, at worst, approximately four-and-a-half times as long. *Cf. Reeves*, 2023 WL 5736944, at *3 (explaining, in the context of § 4241, that *Jackson*'s "reasonable relation" requirement "does not permit a pre-hospitalization detention period, whose only purpose is to place the defendant at a suitable facility for treatment, to last over twice as long as the maximum time Congress permitted for the entire length of his hospitalization"). While insufficient staffing or bed space at BOP facilities may provide an explanation for the delay in transporting Wells, these circumstances do not change the reality that Wells is poised to be detained for at least five and up to seven months awaiting an assessment which itself cannot exceed forty-five days, and consequently these circumstances do not alleviate the significant due process concerns attendant to the delay. *See, e.g., id.* (finding that the BOP's strained resources "cannot be accepted to excuse a due process violation"); *Zapata-Herrera*, 2015 WL 4878319, at *3 (finding that "a lack of bed space at medical facilities does not constitute good cause for delaying defendants' treatment").

Wells also references 18 U.S.C. § 4247(i)(A), which permits the Attorney General to "contract with a State, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody" pursuant to the IDRA. *Accord Reeves*, 2023 WL 5736944, at *3 (making this observation about § 4247(i)(A)). Although in this case the parties have not addressed whether or to what extent the Attorney General has undertaken efforts to contract with another facility to hospitalize Wells, the Court notes that this alternative exists and should be explored, if it has not already, in an effort to get Wells transported to a suitable facility as quickly as possible.

The Court next considers the appropriate remedy in these circumstances. Wells requests either an order requiring that he be transported to a suitable facility within seven days, or alternatively that he be immediately released. In reviewing the caselaw on this issue, the Court perceives a trend among some federal district judges who have chosen to remedy the extended delays by ordering their defendants to be transported to a BOP facility by a date certain. *See, e.g.*, *United States v. Lara*, 671 F. Supp. 3d 1257 (D.N.M. 2023) (ordering that the defendant be transported to a suitable facility "no later than seven days from the entry of this Order"); *United States v. Leusogi*, 2022 WL 11154688, at *3 (D. Utah Oct. 19, 2022) (ordering that the defendant be transported "to a suitable facility for restoration proceedings" within seven days from the entry of the court's order); *Calderon-Chavez*, 2023 WL 5345582, at *11–12 (ordering that the defendant be transported to a suitable facility within 21 days from the date of the court's order); *Wazny*, 2022 WL 17363048, at *7 (ordering that the defendant be transported to suitable facility within 30

days from the date of the court's order); *see also United States v. Vanarsdale*, 2023 WL 5094011, at *3 (D. Kan. Aug. 9, 2023) (observing that "the remedy routinely issued by courts is an order requiring the government to admit the defendant to a suitable facility within a specified time period").

Other courts, however, have expressed concerns with this remedy because it necessitates the defendant cutting the line in front of other defendants who are also awaiting BOP placement, thereby exacerbating the delays and potential due process violations experienced by those defendants. *See Reeves*, 2023 WL 5736944, at *4 (declining to order the BOP to immediately hospitalize the defendant because "[s]uch an Order would arbitrarily leapfrog Defendant over other defendants, extending the due process violations of those defendants"); *cf. Lara*, 671 F. Supp. 3d 1257 (expressing "ambivalence" about the merits of an immediate transport order because it would "essentially direct the Attorney General to jump the line for Defendant's admission to FMC Butner," which would "only contribute to the delays for other defendants who may have been waiting similar lengths of time"; but ultimately ordering that the defendant be transported to FMC Butner within seven days to remedy the unconstitutional eight month delay in transporting the defendant).

For the same reasons articulated by the *Reeves* court, this Court finds that ordering Wells to be immediately transported is not an appropriate remedy because it would unfairly allow Wells to cut the line in front of other defendants who have also been waiting for placement at a BOP facility, at the expense of the due process rights of those defendants. This line-jumping seriously undermines the concept of a "waiting list" and renders the process a free-for-all where one's place in line is subject to change at any moment due to

an order from a federal judge somewhere in the country. Indeed, the line-jumping authorized by other federal district courts may explain why Wells' own place in line has not been consistent and may have contributed at least in part to the delay in transporting him. Although the Court has serious concerns about Wells' due process rights, the Court concludes that a remedy which would (further) curtail the due process rights of other defendants is inappropriate in these circumstances.

The Court will, however, order the Attorney General not to permit any other defendant to cut in front of Wells in line for a BOP bed without first filing a report with this Court identifying the other defendant and explaining why Wells' position was displaced. The Court will also order the United States to file a status report within 72 hours of the entry of this order notifying the Court of Wells' current place in line, and also to file status reports on the 1st and 15th days of each month, beginning March 15, 2024, notifying the Court of Wells' then-current place in line.

The Court will also revise its September 21, 2023 Order to the extent that the Court will order that Wells be transported as soon as a bed becomes available at any suitable facility anywhere, with no preference given to FMC Butner or any other particular facility. Given the undisputed systemic delays in transporting defendants for assessments and treatment, the Court finds that, at least in the present case, the BOP's asserted preference for continuity in treatment is insubordinate to the need to transport Wells to a suitable facility at the earliest possible date.

Additionally, the Court construes Wells' response to the United States' motion as a request for immediate release to remedy the due process concerns occasioned by the delay

in transport. (Doc. 125). In light of the United States' representation that Wells will be transported by April, along with the aforementioned directives from the Court, which aim to facilitate Wells' timely transport, the Court declines at this stage to immediately release Wells. However, the Court will also Order the United States to notify the Court by April 30, 2024, whether Wells has been admitted to a suitable facility for the ordered assessments. If Wells has not been so admitted, the United States must show cause why Wells should not be immediately released. The Court would also entertain a renewed motion to dismiss the indictment at that time.

**United States' Motion for Evaluation**

The United States requests that the Court order a renewed evaluation under § 4241(d) due to FMC Butner's counsel's belief that FMC Butner cannot conduct a second dangerousness assessment without a concurrent order for a renewed evaluation under 18 U.S.C. § 4241(d). (Doc. 122). The United States represents to the Court that, based on communication with BOP's counsel, evaluation staff could concurrently evaluate Wells' dangerousness under § 4246 while conducting the § 4241(d) evaluation, and that if the Court ordered a renewed § 4241(d) evaluation, it would not extend the forty-five-day evaluation period previously ordered by the Court. (*Id.* at 1–2).

Wells opposes the United States' motion. (Doc. 125). He argues that there are no grounds to order a second evaluation under § 4241(d) because this process has already taken place, Wells was already found to be incompetent and not restorable, and no facts are before the Court which contradict or raise questions about these conclusions. While the Court agrees that Wells has already been found incompetent and not restorable, Wells'

submission fails to persuade the Court that the Court is prohibited from ordering a second § 4241(d) evaluation either by statute, binding caselaw, or other authority. And at least one federal district court has ordered, over the defendant's objection, a second § 4241(d) evaluation in order to accomplish the goal of the defendant receiving a second dangerousness assessment under § 4246. (*See* docs. 128, 129, & 130 in *United States v. McAfee*, 1:18-cr-425-JMF (S.D.N.Y. June 2022)). The Court acknowledges that, unlike here, both parties in *McAfee* requested the second dangerousness assessment, and also that the *McAfee* court's order for the second § 4241(d) evaluation lacks legal analysis. (*See* doc. 130 in *United States v. McAfee*, 1:18-cr-425-JMF (S.D.N.Y. June 9, 2022). Nonetheless, this Court finds the *McAfee* court's order instructive because it supports a finding that this Court is not prohibited from ordering a second § 4241(d) evaluation.

Next, Wells argues that the Court cannot order an assessment under § 4246 because Wells does not meet the criteria for such an assessment. Section 4246 authorizes a dangerousness certification if the person meets one of the following criteria: he or she is (1) "a person in the custody of the Bureau of Prisons whose sentence is about to expire"; (2) a criminal defendant "who has been committed to the custody of the Attorney General pursuant to section 4241(d)"; or (3) a person "against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person." Wells contends that he does not meet any of these criteria. While that may be true at this stage, it appears to the Court that the circumstances would change if the Court ordered a renewed § 4241(d) assessment because then Wells would be "committed to the custody of the Attorney General pursuant to section 4241(d)," which is one of the three circumstances in

which a person may undergo a § 4246 dangerousness assessment. Consequently, the Court finds Wells' argument unavailing.

Finally, Wells contends that he is entitled to immediate release on the grounds that, because he has previously been found not competent, not restorable, and not dangerous, the Court has no further authority to supervise him. The Seventh Circuit case Wells cites in support, *United States v. Lapi*, 458 F.3d 555 (7th Cir. 2006), is inapposite because the issue presented in *Lapi* was whether the district court was authorized to order a dangerousness *hearing* for a defendant who had been *released from the state facility* where he had been transferred pursuant to § 4246(a). *Id.* at 560. The Court does not read *Lapi* to stand for the proposition that the Court is precluded from ordering a renewed § 4241(d) evaluation or a renewed § 4246 dangerousness assessment where, as is the case here, the defendant was previously found not competent, not restorable, and not dangerous. Wells' submissions do not persuade the Court that the Court lacks authority over Wells at this stage.

## CONCLUSION

The Court has serious concerns about the lengthy delays in transporting Wells and other defendants to a suitable BOP facility for evaluation and treatment pursuant to the IDRA. While the Court is sympathetic to the resource shortage at the BOP, the Court must safeguard Wells' due process rights, which in these circumstances do not rise and fall with resource availability. Additionally, while the Court acknowledges the difficult situation facing district judges considering remedies for defendants experiencing lengthy transportation delays, the Court is troubled by the remedy of immediate transport, which

exacerbates delays for other defendants, further infringes their due process rights, and renders the concept of a "waiting list" virtually meaningless.

The Court does not have a proposed global solution to this problem. Even if it did, the problem is not properly within the Court's province to solve but instead is within the province of the Attorney General and Congress.

Accordingly, for the reasons stated, and for good cause, it is

ORDERED as follows:

1. The United States' motion for evaluation pursuant to 18 U.S.C. §§ 4241(d) and 4246 (doc. 122) is GRANTED as follows:

    a. Wells is committed to the custody of the Attorney General to be hospitalized **for a period not to exceed 45 days** to determine whether he can be restored to competency pursuant to 18 U.S.C. § 4241(d);

    b. If the BOP or other facility concludes that Wells remains incompetent and not restorable, the BOP or other facility shall immediately, **for a period not to exceed the 45-day period referenced in Paragraph 1.a.**, determine whether Wells meets the criteria for dangerousness pursuant to 18 U.S.C. § 4246;

    c. At the conclusion of these evaluations, the BOP or other facility shall submit a report of Wells' mental condition and dangerousness to the Court (by U.S. mail and electronic mail at propord_marks@almd.uscourts.gov) and counsel for the parties as soon

as practicable but **no later than 14 days after the evaluations have concluded**;

2. Wells' motion to immediately transport (doc. 118) and motion for immediate release (doc. 125) are DENIED without prejudice;

3. The Court's September 21, 2023 Order is MODIFIED to the extent that the Attorney General, by way of the Bureau of Prisons and the United States Marshal, shall hospitalize Wells for evaluations pursuant to 18 U.S.C. §§ 4241(d) and 4246 as soon as a bed becomes available at any suitable facility anywhere, with no preference given to FMC Butner or any other particular facility;

4. The Attorney General, by way of the Bureau of Prisons and the United States Marshal, is DIRECTED to prohibit any other defendant from jumping ahead of Wells in line for transport to a suitable facility without first filing a report with this Court identifying the other defendant and explaining why Wells' position was displaced, including but not limited to whether it is pursuant to an Order from another federal district court to transport the other defendant by a date certain;

5. **Within 72 hours of entry of this Order**, the United States shall file a status report notifying the Court of Wells' current place in line;

6. The United States shall file status reports on the **1st and 15th days of each month, beginning March 15, 2024**, notifying the Court of Wells' then-current place in line;

7. **On or before April 30, 2024**, the United States shall file a notice informing the Court whether Wells has been transported to a suitable facility for evaluation. If Wells

has not been transported by this deadline, the United States shall SHOW CAUSE in writing, **on or before April 30, 2024**, why Wells should not be immediately released.

Done this 6th day of March, 2024.

                                         /s/ Emily C. Marks
                              EMILY C. MARKS
                              CHIEF UNITED STATES DISTRICT JUDGE